UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

UNITED STATES OF AMERICA

V.                                              16 CR 285 (CM)

ANTONIO MALDONADO,

        Defendant.

_____ x

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

On October 19, 2016, Antonio Maldonado pleaded guilty to narcotics conspiracy in

violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). On May 4, 2017, Maldonado was sentenced to

120 months' imprisonment, the applicable statutory mandatory minimum sentence. Maldonado

is currently incarcerated in the Federal Correction Institution (FCI) (Low) at Allenwood, PA.

According to the Bureau of Prisons ("BOP"), the defendant's scheduled release date is October

13, 2024.

On December 18, 2020, Maldonado filed a motion for compassionate release, pursuant to

18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391.[1]

---

[1] Maldonado originally filed a *pro se* motion for compassionate release on July 22, 2020. Dkt. No. 119. Shortly
thereafter, Matthew S. Aibel from Epstein Becker & Green, P.C., together with Victor L. Lou, of Cleary Gottlieb,
filed a notice of appearance, agreeing to represent Maldonado *pro bono*. Counsel subsequently moved to withdraw
Maldonado's *pro se* motion in favor of the counseled motion that is presently before the court. (Dkt. No. 121.)

1

Maldonado claimed in his motion, principally, that his severe obesity, asthma, and hypertension, among other medical issues, put him at increased risk for severe illness should he contract COVID-19 while incarcerated. Dkt. Nos. 123- 125.

Shortly after making the motion, Maldonado tested positive for COVID-19 and was quarantined. On January 1, 2021, the defendant supplemented his compassionate release motion with additional briefing. Dkt. Nos. 126-127. Maldonado claimed that he was not receiving adequate medical care from the BOP and argued that he should be released because he would receive better care in the community. Dkt. No. 126 at 1. The defendant proposed that he be permitted to reside in the household of a family member who expressed willingness to transport and house Maldonado despite his active COVID diagnosis. *Id.* at 2.

Maldonado has subsequently recovered from COVID-19 and rejoined the general prison population. He nonetheless presses his argument for release, either because he might catch COVID again, or because he might be prone to suffering from so-called "long COVID," a form of the disease in which those who have recovered continue to experience symptoms, such as loss of smell or taste or extended fatigue. Maldonado offers no evidence that he is in fact suffering from "long COVID;" and he offers no evidence about the possibility that he might contract a second case of COVID.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of

2

imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i).

A motion under this provision may be made by either the Bureau of Prisons or a defendant, but

in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal

a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30

days from the receipt of such a request by the warden of the defendant's facility, whichever is

earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a

defendant who has not "fully exhausted all administrative rights," the district court "may not"

modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the

BOP, the Court must then consider whether the defendant has met his burden of establishing

"extraordinary and compelling circumstances" warranting release.[2] Until recently, this Court—

and many of my district court colleagues—looked to United States Sentencing Guidelines §

1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. §

3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling

circumstances."[3] That changed on September 25, 2020, when the United States Court of Appeals

---

[2] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g.*, United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

[3] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)   Medical Condition of the Defendant.—

      (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in

the district court. *United States .v. Brooker* No. 19-32180-CR, 2020 WL 5739712, at \*6 (2d Cir.

Sept. 25, 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has

not been updated since the passing of the First Step Act—addressed only sentencing reduction

motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not

constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second

Circuit declared unequivocally that "district courts have discretion to consider the full slate of

extraordinary and compelling reasons that an imprisoned person might bring before [the court] in

motions for compassionate release," and that "neither Application Note 1(D), nor anything else

in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at \*7.

What *Brooker* did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court

contemplating a defendant's release pursuant to that section must first consider the sentencing

factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they

counsel for or against release. A court may still deny compassionate release where the § 3553(a)

---

(ii)     The defendant is—

    (I)     suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)   experiencing deteriorating physical or mental health because of the aging process, that
        substantially diminishes the ability of the defendant to provide self- care within the
        environment of a correctional facility and from which he or she is not expected to
        recover.

*Id.* § 1B1.13 comment (n.1).

4

factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

Maldonado has Exhausted his Administrative Remedies

On May 27, 2020, Maldonado made a *pro se* motion for compassionate release (or, in the alternative, for a transfer to home confinement) with the Bureau of Prisons. *See* Dkt. No. 125 at 10. That application was denied on June 9, 2020. *Id.*

On November 5, 2020, *pro bono* counsel made a new application to the BOP for compassionate release, citing, *inter alia*, Maldonado's medical conditions, and increased risk for severe illness should he contract COVID-19. *See* Dkt. No. 125 at 10. That application was denied on November 10, 2020. *Id.*

Accordingly, Maldonado has exhausted his administrative remedies, and his motion is properly before the court.

The Merits of Maldonado's Motion

Maldonado has failed to demonstrated an extraordinary and compelling reason warranting compassionate release. Even if he had made such a showing, the sentencing factors at 18 U.S.C. § 3553(a) counsel against release.

*Maldonado's Health & COVID-19 Risk*

According to Maldonado's BOP medical records,[4] he is 56 years old severely obese male, with asthma and hypertension. In and of itself, that does not qualify as a serious medical

---

[4] *See* Maldonado's BOP Medical Records, Government Opposition (Dkt. No. , Exhibit A).

5

condition. Maldonado is not yet 60 years old, and his co-morbidities, while serious, are sadly common among men his age, both in and out of prison. BOP, as is well known, has many such individuals in its care.

Maldonado's conditions do, in theory, increase his risk from COVID. According to CDC guidelines, obesity increases a person's risk for severe illness from COVID-19, and asthma and hypertension qualify as diseases that might place individuals at an increased risk for severe illness from COVID-19.[5] In other circumstances, that might give the Court pause.

However, in Maldonado's case we are dealing, not in theory, but in actuality. Maldonado contracted COVID-19 back in December. He appears to have made a full recovery. The theoretical severe outcome did not occur.

According to Maldonado's medical records, BOP medical staff at Allenwood (Low) monitored Maldonado's condition daily after his COVID-19 diagnosis. He complained primarily of body aches, headaches, and fatigue. From December 29, 2020 through January 1, 2021, he reported a shortness of breath (Ex. A at 11-18), and on December 29, 2020, his pulse oximeter reading was 92%—below the normal range. (Ex. A at 9, 18). The next day, on December 30, 2021, the medical staff ordered a chest x-ray, which showed his lungs were bilaterally clear and that he did not have pneumonia. (Ex. A at 3, 16-17). Beginning on January 1, 2021, Maldonado's vitals were all within the normal range: no fever, and normal oxygen saturation levels. (*See, e.g.*,

---

[5] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical- conditions.html.

Ex. A at 8).  Maldonado was never at risk of hospitalization; his symptoms were generally managed with Tylenol. (Ex. A at 1-2, 11).

Maldonado has been returned to the prison general population. No evidence before the Court suggests that he has not fully recovered.

Counsel argues that Maldonado's recovery cannot be presumed until the Government provides proof that his client has tested negative for the virus. But the Government has no burden of proof on this motion. *See, e.g., United States v. Butler*, 970 F.2d at 1026.  Moreover, CDC guidance released just last week explains that persons who have recently recovered from COVID can test positive for as long as three months after they cease to be infectious, due to the presence of viral particles that are not "replication competent." See, https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (updated February 13, 2021. Therefore, a positive COVID test would not mean that Maldonado had not in fact recovered from COVID, while his lack of symptoms supports a conclusion that defendant has in fact recovered from the virus.

Counsel argue that, even if defendant has recovered, he remains at high risk of suffering a severe outcome if he should become infected again with the virus.  They offer not a scintilla of evidence to support this speculative statement. According to the CDC, "Cases of reinfection with COVID-19 have been reported, but remain rare….." https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html. While the CDC is still "learning more about COVID-19" and the virus' potential for reinfection, *id.*, most experts believe that a person who has recovered enjoys immunity anywhere from a several months and perhaps several years. *See* https://www.

7

nytimes.com/2020/12/05/health/covid-natural-immunity.html. Maldonado has not offered any evidence that this assessment is untrue, or that he is at particular risk of reinfection. Everything that is known to this court suggests that he is presently at low risk, and—with the BOP committed to vaccinating all prisoners during the upcoming months—that he will continue to be at low risk.

Moreover, according to BOP website, prison officials seem to have the virus at FCI Allenwood (Low) under control. While there have been 580 COVID-19 tests administered since the Pandemic began, yielding 301 positive results, *See* BOP COVID-19 Dashboard, https://www.bop.gov /coronavirus/ (last visited February 10, 2021), at present no staff are testing positive, and only one inmate is currently testing positive. *Id.* Maldonado would arguably encounter more COVID-19 infected persons if were released to the community than he would at FCI Allenwood (Low).

Counsel also argues that Maldonado might suffer lingering effects of COVID-19 infections. It is true that clinicians are seeing instances of so-called "long COVID," in which individuals who have survived a bout of the virus never stop experiencing known symptoms of the disease, such as the loss of the sense of taste and smell or fatigue.[6] But there is no evidence in the record on this motion that Maldonado is experiencing any lingering symptoms of COVID,

---

[6] "Researchers estimate about 10% of COVID-19 patients become long haulers, according to a recent article from The Journal of the American Medical Association and a study done by British scientists. That's in line with what UC Davis Health is seeing." https://health.ucdavis.edu/coronavirus/covid-19-information/covid-19-long-haulers.html "The list of long hauler symptoms is long, wide and inconsistent. For some people, the lasting coronavirus symptoms are nothing like the original symptoms when they were first infected with COVID-19. The most common long hauler symptoms include: Coughing, ongoing, sometimes debilitating, fatigue, body aches Joint pain, shortness of breath, loss of taste and smell, difficulty sleeping, headaches, and brain fog." *Id.*

and I will not speculate that he might someday develop any. If he does, that will be the time to address them.

COVID aside, Maldonado argues that he should be released due to his chronic conditions, because he would receive better care for them back in the community. Apparently, Maldonado has told counsel that his prison medical records, which were provided to the Court by the Government, are inaccurate. *See* Aibel Third Decl. at ¶ 3.3. He claims, for example, that after he was diagnosis with COVID-19, "he reported a cough and sore throat, and yet that is not reflected in any of his initial medical records." *See id.* at ¶¶ 4, 5. Maldonado also claims that his treatment was far from thorough, and that his "daily monitoring" visits lasted no longer than three minutes at a time. *Id.* at ¶ 6. But none of that would convince the court to grant a compassionate release motion, because none of it demonstrates that Maldonado suffers from, or is in imminent danger of suffering from, any extraordinary or compelling medical condition.

Maldonado's chronic medical afflictions are, as had been noted, sadly commonplace both in and out of prison. Obesity and asthma are conditions the BOP is equipped to handle; it cares for many affected inmates. That better care for these conditions might be found outside the walls of a prison would not support a finding that extraordinary and compelling medical circumstances warrant his release.

In short, Maldonado has not met his burden of demonstrating the "extraordinary and compelling circumstances" needed to grant his compassionate release motion. For that reason alone, the motion must be denied.

9

*The 18 U.S.C. § 3553(a) Factors*

Even if Maldonado had met his threshold burden of demonstrating an "extraordinary and compelling" reason to be considered for compassionate release, the sentencing factors at 18 U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A)— counsel against a sentence reduction. Principal among those considerations are "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2) (A-C).

Maldonado's crimes were extremely serious. Maldonado orchestrated the distribution of multiple kilograms worth of heroin on the streets of the Bronx for more than a year, preying on drug addicts to help him advance his drug sales. He is a recidivist many times over, who has never successfully completed a term of probation without incident. At the time of the offense, he was still on parole from his last drug crime, during which he was caught in possession of four firearms, a stun gun, and a bulletproof vest, in addition to a large quantity of heroin, crack cocaine and marijuana. Maldonado committed each of these offenses when he was in his 40s, and was already suffering from the medical issues he now cites in support of his motion. PSR at ¶¶ 70-71. The fact that he suffered from chronic conditions that might make a prison sentence harder did nothing to stop him from engaging in these dangerous crimes.

10

As I said at the time of sentencing, Maldonado's use of "the desperate needs of addicts to employ people who could serve as his distributors on the street," and his criminal history indicated that he was "a much colder and more calculating individual" than he claimed. (Dkt. No. 91 at 10-12.) The statutory mandatory minimum 120 months' sentence was warranted at the time of sentencing; it remains so today.

The motion is denied.

February 17, 2021

Colleen McMahon
Chief Judge

11